Thank you, Your Honor. May it please the Court, my name is Sean Strauss. I and my supervising attorney, Carter White, represent the appellant Barbara Snow-Erlin in this action. If possible, I would like to reserve four minutes of my time for rebuttal. Mrs. Snow-Erlin asks that this Court reverse the district court order granting the government's motion to dismiss for lack of subject matter jurisdiction. There are three primary reasons this Court should overturn the district court's order. First, it is law of the case that this claim sounds of negligence rather than false imprisonment. And even if this Court finds that it is not law of the case, Judge Kleinfeld's determination on this claim was correct on the merits, because this claim does not arise out of false imprisonment in the manner specified by 28 U.S.C. Section 2680H, and we have alleged a like circumstances liability under California law. What is the source of the alleged damages to your client? What is he seeking payment for? There are two separate sources for the damages to my client. The initial source is the negligent calculation of his parole expiration date. But let me put it another way. If he had not been held in custody for too long, he would have no claim for damages, correct? No, that's incorrect, Your Honor. There are damages that arise out of the negligent calculation of parole other than the incarceration. What are they? Just the damages of being on parole for a longer period of time than you should be, the curtailment of Fourth Amendment rights, the being subject regularly to reporting requirements, having to go into the Parole Commission and tell them your change of address, all of these circumstances which follow from being on parole arise out of the negligent parole calculation. So that would be an injury from some sort of continuing obligation to remain under supervision, is that it? How would you measure those damages? That would be determined by the finder of fact. Yes, but on what evidence? You're going to call an expert witness who's going to say that he had to call into his parole officer every week or tell the parole officer whenever he changed his address because he didn't do or he would have had to do that for six extra months? That's worth $1,000 a month? Well, it's a measurement of time, Your Honor. It's simply, you know, the amount of time taken away from Mr. Earle and, you know, the time that he spent can be measured easily by an expert. Freedom is not restricted in the same way that a person sitting in a cell for an extra 20 months is restricted. You're correct, Your Honor. But his freedom is still restricted in a way that satisfies the damages element. Do you have a case that supports damages on this sort of thing? This is an interesting theory. Do you have any case that supports it? We do not, Your Honor. This is the case. This is the case. Let me ask you one other question. How much longer, in fact, was he on parole apart from the extra time in prison? In other words, assuming the theory that you just expounded is correct, was he in fact on parole apart from the imprisonment longer to a later date than he should have been? Yes, Your Honor. According to the magistrate judge, the maximum period for parole supervision ended before Mr. Earle's alleged parole violation for driving under the influence in March of 1996. But did he ñ I guess I'm trying to figure out. I'm having trouble focusing because I didn't really understand this to be your theory, so I didn't look at the facts with this in mind. But did he, in fact, have parole reporting requirements apart from having been taken back into custody and held? Do you understand what I'm asking? Did he have a period of just ordinary parole that he ñ Yes, Your Honor. It would have been March 1996, April of 1996, and May of 1996 before the parole commission moved to revoke his parole in June of 1996 pursuant to the arrest for driving under the influence. So you're saying there's three months where he was on parole that he shouldn't have been on parole? Exactly, Your Honor. That is the negligence action. That is the damages basis for the negligence action, and the imprisonment is our consequential damages that come from that initial negligence on the part of the parole commission. But it's a little bit circular. That's basically you've got a period of three months where he was under supervision, and under the theory you're arguing today, he shouldn't have been under supervision, and he's entitled to some difficult-to-quantify measure of damages for that. But the rest of the time he was incarcerated, you claim wrongfully as a result of the erroneous calculation of his release date, he wasn't under ñ he wouldn't have any supervision damages for the period of time that he's incarcerated, right? That's correct, Your Honor. But Mr. Erlin would still be entitled to recover for the damages resulting from the incarceration as well because those damages are consequential from the initial ñ Excuse me. Wait a minute. Yeah. But torts are not defined by their damages, Your Honor. Torts are defined by the underlying conduct. It's a little bit tricky. As an element of the tort violation, you have to show the injury, do you not? Yes. So you can't really separate damages from the elements or claims. Well ñ Or the elements of the claim itself, can you? Well, under Ninth Circuit case law, in fact, you can, Your Honor. The government argues that negligence leading to intentional torts is not actionable under the law of the circuit, but that's just ñ that's simply not correct. You have negligent supervision and hiring claims that plaintiffs have been allowed to pursue in both Bennett and in Sanger that ñ that this is not anything like a negligent hiring claim. But it is still an underlying negligence claim that led to the commission of an intentional tort. Let me ask you another question factually. I'm still worrying over this March, April, and May 1996 because in your complaint, page 3, paragraph 9, you allege that his parole period did not expire until June 16th, 1996. So if he was still legitimately on parole until June 16th, 1996, how could he possibly claim damages for March, April, and May of 1996? The allegations in the complaint say on or about June 16th of 1996. The magistrate judge in the habeas order determined that the maximum period for supervision had ended before his ñ before his arrest for driving under the influence, which occurred in March of 1997. And Mr. Erlin's estimate as to the approximate end of his parole period is just that, his estimates. But that ñ I understand that. He may have been incorrect. But with that understanding, the complaint doesn't ask for damages for the period March, April, and May 1996 for being on parole and having to report because he thought he was still legitimately on parole. So I guess I'm trying to struggle with whether the theory that you've given us today was the theory that you actually sued on at the time. This ñ Mr. Erlin sued in essentially a pro se manner, Your Honor. We were brought into this case. Although the complaint was signed by an attorney, it was not ñ it was not represented by the UC Davis Civil Rights Clinic at that time. We were brought into the case. That's not ñ that's not the test. Maybe he got better attorneys, but he had an attorney who signed without making any judgment. But let me just read you this one complaint ñ paragraph. This is where I kind of keep stopping. In the complaint, they say, ìThe defendants were negligent and breached their duty to plaintiff by negligently and wrongfully seizing and incarcerating him.î And then it goes on to say, ìThey failed to use due care by keeping him in custody.î My question is this. Although your complaint is for negligence, it seems to me you can't just label something negligence when in fact it really is ñ it's a false imprisonment claim. Every time I read the complaint over and over and I read the papers, and the real problem is that he should have been out when he was in. And whether you call that negligence or false imprisonment or wrongfully seizing and incarcerating him, doesn't it boil down to the same thing? What we have here, Your Honor, is we have two underlying torts at issue in this case. We have Tort A and Tort B. Tort A is the underlying negligent calculation of the expiration of his parole term. Tort B is the seizing and incarcerating of Mr. Erlin. But that's not how you drafted your complaint. But let's separate those. Let's separate those. Do you agree that wrongful imprisonment is excluded under the Tort Claims Act? Yes. False imprisonment is excluded under the Tort Claims Act as false imprisonment was conceptualized when the Tort Claims Act was adopted in 1946. Accordingly, there must be intent for a false imprisonment to lie under the Federal Tort Claims Act 2680H exception. In this case, when the parole commission negligently aggregated Mr. Erlin's parole sentence, there was no intent. Accordingly, this claim, the initial negligence claim, can't arise out of false imprisonment as a result of the tort when the FTCA was adopted in 1946. And what is your basis for that argument, that, I mean, as we read false imprisonment, there's a lot of ways you can get to false imprisonment? But why, in your view, must we limit it to your interpretation? Well, because the First, the Ninth Circuit has indicated that the conception of torts in 1946 in Sheehan is the conception of torts used when defining the 2680H exceptions. Under, in Newstat, the Supreme Court used the restatement first of torts to define misrepresentation. And under the restatement first of torts, you need either to have intent or knowledge to a substantial certainty that imprisonment will occur, or you need, or you need to be able to identify the person. And no false imprisonment can exist when confinement is pursuant to an arrest. Accordingly, under the conception of false imprisonment as it existed in 1946 when the FTCA was adopted, there can be no false imprisonment in this case. And with that, I'd like to reserve the remainder of my time. Well, let me just ask you another question. If the Tort Claims Act excludes murder, and somebody murdered somebody, but they were negligent because they misidentified the person. They thought actually that it was the person that had murdered their sister. It turns out it wasn't. But they were just negligent, and then they murdered somebody. Would they have a negligence claim, even though ultimately they had murdered someone? No, Your Honor. But in that circumstance, in that hypothetical, there's only one actor. And in this circumstance, although it is a claim against the government, generally you have individual actors within the government, and you can base claims on the individual conduct of those individual actors. Mr. Strauss, can you point to me anywhere in your complaint besides paragraph 21 and 22 where you seek a total of $750,000 in damages, where the damages are quantified for this new theory that we're hearing? No, Your Honor. But I believe the plea for general damages is broad enough to encompass the damages arising out of a negligent parole calculation. So 21 and 22 are the only paragraphs in the complaint that talk about damages? I believe so, Your Honor. With that, I'd like to reserve the remainder of my time. You may do that, Mr. Strauss. Thank you, Your Honor. And we'll hear now from Ms. Cormier. Good morning. May it please the Court. My name is Claire Cormier. I'm an assistant United States attorney for the Northern District of California, and I represent the United States in this case. I'd like to touch on first a few things that appellant's counsel talked about. First of all, with regard to the source of the alleged damages being the negligent calculation and the parole period as opposed to a period of incarceration. That is a completely new theory as far as I can tell, Your Honor. I don't see it anywhere in the complaint. It was not argued in their briefs. And this Court has many times held that one can't bring new theories to the case at the appeals court level. Also, with regard to the – that there was no intent to falsely imprison that counsel was just discussing. Again, that's a new issue that I don't believe has been discussed in any of the papers previously filed, either at the district court or this court. However, Federal courts throughout this country, including in this circuit, have held that the exclusion under the Federal Tort Claims Act for intentional torts has been read to include the negligent versions of the excluded torts, such as false imprisonment. And in any event, the intent for false imprisonment is the intent to imprison. It's not the intent to do it wrongly. Therefore, for example, if a store security guard holds somebody improperly, they're not intentionally doing it improperly. They're intentionally holding the person. Similar situation here. There was certainly no intent by the government employees that this was a wrongful imprisonment. However, they did intend to put him in prison. And that is explicitly barred by the Federal Tort Claims Act. Counsel, what's your response to the first argument, which didn't get much play in our discussion with Mr. Strauss? And that is the law of the case question. Even when our court makes a mistake in a case, we don't necessarily fix the mistake on round two. And let's assume for the moment that we agree with your interpretation of a false imprisonment claim and what it entails. How do you read the court's previous decision? And did it decide in a way that we should respect that there is a negligence claim in this instance? Well, as the district court discussed, the previous panel of this court stated at the outset they were deciding a statute of limitations case. So they took the cause of action as pled. Plaintiffs said it was a negligence cause of action, and they looked at that and then applied the rules for accrual of statute of limitations under the Federal Tort Claims Act. I think that the closest case on this issue that's cited in the papers is the Rebel Oil case, which came out of this circuit in 1998. That case also came to this court twice. And the second panel determined that two brief references to certain issues in the first panel's decision were, and I'm quoting here, better read as descriptions rather than dispositions. And therefore, even though those issues had been stated in the previous opinion, the second panel was able to say, okay, but now we're really looking at those issues and we'll decide them now. They weren't decided before. In addition, in the previous decision, the court stated that the statute of limitations did not accrue until the habeas decision in a claim that was for, quote, negligently calculating a prisoner's release date or otherwise wrongfully imprisoning the prisoner. So in the actual holding of the case, they said whether it was negligently calculating the prisoner's release date or otherwise wrongfully imprisoning, in either event, they held that the statute of limitations didn't accrue until the habeas decision. Sotomayor, can you help me? Going back to the original, I think it was the government's motion to dismiss and or for summary judgment, did that also include dismissal on grounds of the Federal Tort Claims Act, but the district court just didn't reach it? In the very first case, Your Honor? Well, yeah. In terms of what was kind of on the table when the district court made its statute of limitations ruling, do you happen to know? I don't know the details of that motion, Your Honor. That goes back quite a number of years in this case. However, at the Ninth Circuit level previously, contrary to what appellants have stated in their reply papers, the government did not argue a distinction between false imprisonment and negligence. To the extent that the court that the government argued that it was false imprisonment, they were distinguishing it from malicious prosecution. And that was because the Heck v. Humphrey case was that issue. Okay. So if that wasn't myself was talking about towards the end of his opinion where he talks about the government argues that Heck should be distinguished because Erlin's claim is for false imprisonment, not malicious prosecution, but in fact, it is not for false imprisonment. It is for negligence. Correct. And the argument that was made below that cited, you know, the Westlaw site was provided by appellants' counsel in their reply brief. I took a look at that brief, Your Honor, and the argument there very clearly is distinguishing the Heck v. Humphrey situation of malicious prosecution versus false imprisonment. There was no argument below or, excuse me, in the previous panel as to whether or not it was negligence versus false imprisonment. The government did not make that distinction in its arguments at that time. So how do we handle the language? Did we just sort of write it off as dicta? That's not really the decision of the panel. The panel really was simply saying we're just deciding a statute of limitation question. Your Honor, I think it's very similar to the Rebel Oil case, where the court is putting out some statements in its decision, but it's not what is being decided. As I — the language that I quoted from the previous earlier decision, Erlin decision, that the habeas decision was the starting point for the accrual of statute of limitations. It acclaimed for, quote, negligently calculating a prisoner's release date or otherwise wrongfully imprisoning the prisoner. That shows that it wasn't necessary to the decision as to whether it was a negligent calculation or a false imprisonment. Under either theory, the calculation would have been the same, and therefore it's dicta. The whole discussion preceding this relates to Heck, as I recall. Yes. They're trying to figure out whether or not it would fall in or out of Heck and then decide they don't have to decide. Correct. Because the Heck v. Humphrey case was clearly the big issue in the previous Ninth Circuit argument. If for some reason this Court should decide that the law of the case applies and they have to call this a negligence action, that still doesn't mean that there's liability here. Under the new Olson case from the United States Supreme Court last year, the Court has stated that if you've got a peculiarly governmental action with no private party analogy, then there can't be liability. You have to have a private party analogy that makes sense. Here, if you look at the Bush case cited by the appellants, actually, in that case they talk about applying the most reasonable analogy. And I will agree with appellants that you should apply the most reasonable analogy should you get to this portion of the arguments. Here, the most reasonable analogy is not a criminal defense attorney doing a bad job. The most reasonable analogy is a false imprisonment situation. And so even if you're going to call it negligence, if your analogy is a false imprisonment situation, then you have to treat it in that fashion for determining whether or not it's excluded under the Federal Tort Claims Act. For example, in the Bush case, they looked at what body of law they should apply and found that it was the body of law that would govern a private shipyard under like circumstances in Hawaii, because that was the State law at issue there. And where the analogy proposed by the plaintiff in that case was too strained, the Court rejected it and found no government liability under the Federal Tort Claims Act. So while Olson did direct the courts to look for a private party analogy, it still has to be a reasonable one. Alitoson Well, wouldn't the most analogous situation be like a Corporation of America situation where you have a private jailer being immunity for private jailers in the same way that they provide immunity for sheriffs in the room? Well, California's immunity laws don't apply here. The this Court and the California and the United States Supreme Court have both stated that California immunity laws don't apply to, for public, for public entities. Well, that's the question. The question is, is there any public liability law that would apply, and if there is some form of immunity accorded by statute, then the answer is no, that there is no direct analogy to holding a government liable for negligently calculating somebody's release date. And if there's no direct analogy? Then you lose. No. If there's no direct analogy. Plaintiff loses. Yes. Someone loses. But it sort of ties back on itself, because there is, in the private prison context, that is a private analogy, but the reality is you can't sue them because there is a State statute. So in effect, you've X'd out the private analogy. To the extent it's a private prison, then it's the imprisonment that we look at,  to the extent you're looking at the calculation of the parole period, that's something that no private party does. That's a governmental purpose. And unless you have a State court, you know, a State duty that doesn't just arise out of Federal statutes or Federal duties, you can't get to the federal court claim that. Is there an analogous provision? I mean, I don't know if California has a, well, I guess it does. It has a parole board, right? And don't they make computation decisions all the time as to what an inmate's release date is? Well, again, that is a public entity. And the courts under Indian Towing and Olson have stated we don't look to public entity analogies. We look to private analogies, because the Federal Tort Claims Act says that the government is liable to the same extent as a private person. And that reverses a line of Ninth Circuit precedent. But that is the current state of the law under the United States v. Olson. Unless the Court has any further questions, I'll submit. Thank you, Ms. Cormier. And I'm sorry I mispronounced your name on round one. Everyone does. Well, actually, I just. Is there supposed to be an I in there? There wasn't an I on our piece of paper, so. We'll blame it on the clerk's office. I could blame it on my poor recollection of French, too, but. Mr. Strauss, you have some rebuttal time remaining. Thank you, Your Honor. My first point is, to the extent that any arguments here are new, every one of these arguments go to the underlying, the merits underlying Judge Kleinfeld's determination in Erlin I, and thus are necessarily encapsulated in our law of the case argument. Do you agree with the characterization by Ms. Cormier that what the government was arguing in Erlin I was the applicability of Hecht v. Humphrey and not the distinction between false imprisonment and negligent calculation? The government cites Collins v. City of, v. County of Los Angeles, which states under, in their brief, which states under California law, you don't necessarily need a favorable judicial determination before a false imprisonment action accrues. Thus you're not answering my question. My question was, do you agree with the government's representation that the argument that the panel was addressing in the portion of Judge Kleinfeld's opinion, which I read, was dealing with the applicability of Hecht v. Humphrey and the distinction between false imprisonment and malicious prosecution? That section of the opinion, I do believe so, Your Honor, yes. But as I should interpret that language in light of the argument that the government was making in Erlin I. Well, as I stated a moment ago, Your Honor, the government also argued in its brief that Collins v. – cited Collins v. City of Los Angeles, which false imprisonment actions – you don't need a favorable judicial determination for a false imprisonment action statute of limitations to begin running. Thus, if this were a false imprisonment action, the statute of limitations issue would have come out completely differently in Erlin I. Also, I want to stress the differentiation between the inquiry under 1346B as to liability of private persons and 2680H as to the torts that are accepted under the Federal Tort Claims Act. Under 2680H, you need to use the federal general law to define the scope of the exceptions and the torts under those exceptions. 1346B, you use state law to define the liability of the government. Under California law, negligence leading to a wrongful incarceration is actionable, as is demonstrated by – But doesn't Olson just tube that argument? Because they specifically said we don't look to the law of municipalities and state liability. We look to private actors. As to – as to that question, the Martinez case looked to the liability of an individual, which he cited in our 28J letter, looked to the – if I may finish that one, Your Honor, looked to the liability of an individual actor, an LAPD officer for negligent acts that led to a wrongful incarceration. Municipality again. Municipality and a county. And you're not answering my question, counsel. My question is, doesn't Olson specifically address the argument that you're making that we don't look to the law of municipal or state liability? We look to the law as it relates to private actors. The individual officer in the Martinez case was held to be liable as well, and thus the individual private actor in that circumstance was liable for his negligent acts that led to the wrongful incarceration of Mr. Martinez. And with that, I will submit. Thank you, Your Honor. Thank you very much. The case just started this minute. Excuse me. And I want to just express my appreciation to the program at Davis. We appreciate very much your arguments. Excuse me. Sorry. Okay. I'll try to stop doing that so we can hear the last case.
judges: Graber, McKeown, Tallman